Cutter v. Folsom.

## CUTTER *v.* FOLSOM & a.

A plea that the defendant was discharged by a decree of a district court, under the bankrupt law, must show that he was of a class of persons entitled as debtors, and as residing within the jurisdiction of the court, to the benefits of the act; and that he actually applied for them by petition. But it need not aver that the debt sued for was not of the class excepted from the operation of the act, or that it was provable under it.

Cutter *v.* Folsom.

One residing within the jurisdiction of the district court, who is a member of a foreign firm, may take the benefit of the act, and be discharged as well from his partnership liabilities as from those of a private nature.

The act of Congress, passed August 19, 1841, entitled "An act to establish a uniform system of bankruptcy throughout the United States, " is not unconstitutional.

A plea of matter of avoidance which has arisen since the commencement of the suit, need not be pleaded *puis darrein continuance,* if pleaded at the first term at which the defendant appears.

It is not necessary, in order to entitle a party to the benefit of the bankrupt act, that he should have resided within the United States at the time of the passing of the act, or of its going into effect.

DEBT on a judgment recovered before the court of common pleas, August term, 1844, for $4,650, debt or damages, and $10 cost. Also to recover $6,000, for divers goods, wares and merchandize, &c.; and also for $6,000, money paid, laid out and expended; also for $6000, money had and received; also for $6,000, for certain cargoes of merchandize, goods, wares and chattels, shipped by the plaintiff to the defendants.

The writ was dated July 6, 1842, and entered at the September term, 1842.

The property of the defendants having been attached, but no personal service having been made, the action was continued from term to term, until August term, 1843, when Folsom, one of the defendants, appeared, and pleaded, 1, that they do not owe the plaintiff in manner and form as he hath alleged, &c., and filed the following brief statement, and says, that on the trial of said action the said Folsom will offer evidence to prove that on the 27th day of March, 1837, the said defendants paid the debts and demands mentioned in the said declaration; that one Charles Cushing, for himself, and Charles W. Cutter and James Shepley, as assignees of said Jacob Cutter, received of and from the defendants, ten per cent. in full discharge, acquittance, satisfaction and release of all the claims, debts

Cutter *v.* Folsom.

judgments, dues and demands mentioned in said declaration; and that thereby all the causes of action, the said judgment and all the other claims and demands mentioned in said declaration, were paid, cancelled, acquitted, released, and forever barred and discharged; also that the judgment in said declaration mentioned was illegal, and fraudulently obtained, and no evidence of debt was ever filed in the support of said judgment.

2. He pleaded that he, the said Folsom, before and on the fifth day of August, 1834, and from thence continually, until the filing of his petition, on the 29th day of October, 1842, herein after mentioned, praying that said Folsom may be declared a bankrupt, was a merchant, and until the said Folsom returned to the said district of New-Hampshire, viz., on the twentieth day of October, 1842, and during all the time, did use and exercise the trade of a merchant, by way of bargaining, exchanging and bartering, and sought his trade with one William S. McCullock, being the same William McCullock in the plaintiff's declaration mentioned, to wit, at Jeremie, in the island of St. Domingo, and until said Folsom left and departed from Jeremie, viz., on or about the first day of October, 1842, for the purpose of resuming his citizenship, viz., at said Portsmouth, in said district of New-Hampshire, where the said Folsom ever resided as an inhabitant, except during his absence at said Jeremie for the purpose of exercising the trade of a merchant, as a copartner with the said McCullock, under the late firm of Folsom & McCullock.

And the said Folsom, so using and exercising the trade of a merchant, and in copartnership with said McCullock, under the late firm of Folsom & McCullock, and also in his private capacity, and seeking his trade and living as aforesaid, afterwards, to wit, on the fifth day of August, 1834, became, and was indebted to divers citizens of said district of New-Hampshire, and particularly as the copartner in trade with the said McCullock, to the said Jacob

Cutter in the sums mentioned in the plaintiff's declaration, and for said causes of action, or some of them thereof, against him and the said McCullock.

And the said Folsom was then and there, and a long time afterwards, indebted to divers other persons, in divers places, in divers large sums of money, accruing at different times; and being indebted in his private capacity, and as the copartner of the said McCullock, afterwards, and after the filing of his said petition, praying that said Folsom may be declared a bankrupt, at a district court of the United States, holden at Exeter, in said New-Hampshire district, on the 24th day of December, 1842, he, the said Folsom, was duly declared a bankrupt, pursuant to the act of Congress of the United States, entitled "An act to establish a uniform system of bankruptcy throughout the United States," passed August 19, 1841, which said act was then and long afterwards in force concerning bankrupts; and that thereupon, afterwards, to wit, on the 24th day of December, 1842, a commission of bankruptcy under the seal of said court, grounded upon the said act of Congress, was duly awarded and issued out of the said district court to Samuel Cushman, esquire, of said Portsmouth, as assignee of the estate of said Folsom, thereby transferring all the estate of the said Folsom, by operation of the said act of Congress, and the law, to the said Cushman, assignee as aforesaid, authorizing the said assignee to proceed according to the said act of Congress concerning bankrupts, and to do and execute all and every thing whatsoever, according to the provisions of the said act of Congress, by virtue of which commission the said Cushman, assignee as aforesaid, having duly taken the oath prescribed and appointed to be taken by assignees of bankrupts, and due notice of said proceedings having been published in three public newspapers, according to the statute in such case made and provided, afterwards, to wit, on the 8th day of March, 1843, duly made his report of

Cutter *v.* Folsom.

his proceedings, under oath, and filed the same in the office of the clerk of said district court of the United States for the New-Hampshire district, and the same report was duly allowed and approved by the said district court. And the said Folsom further says, that due notices of the filing of his said petition, praying to be declared a bankrupt, and of the appointment of the said Cushman, assignee, and of his (said Folsom's) other petition, praying that said Folsom may be fully discharged of and from all his debts owing by him in his private capacity, and as copartner in trade of the said McCullock, were duly published in three several public newspapers, published in said district of New-Hampshire, in conformity to all the requisites of the said act of Congress; and the said Folsom *bonâ fide* surrendered all his estate, rights, debts, credits and effects, with the exception of the necessary household and kitchen furniture, and other articles and necessaries allowed to the said bankrupt, under and in virtue of the proviso to the third section of the said act of Congress, and fully complied with and obeyed all the orders and directions which have been from time to time passed by the said court, and conformed to all the requisites of the said act of Congress, and no written dissent to granting his discharge so prayed for was filed by a majority in number and value of his creditors, who have proved their debts; and the said Folsom, having made a full disclosure and discovery of all his estate and effects, rights, debts and credits, further says, that he, the said Folsom, afterwards, to wit, on the 22d day of March, 1843, at a district court of the United States holden at Portsmouth, in said New-Hampshire district, by the order, decree and allowance of the said court, was accordingly fully discharged of and from all his debts, owing by him in his private capacity and as copartner of said McCullock, at the time of the presentation of said petition, on the said 29th day of October, 1842, and then and there obtained his certificate of dis-

charge from his debts, accordingly, from the said district court. And the said Folsom further says, that the several causes of action, debts and claims in the plaintiff's said declaration mentioned, accrued and each and every of them did accrue to the plaintiff before the said Folsom so became a bankrupt as aforesaid, to wit, at Exeter aforesaid, and this," &c.

To this pleading the plaintiff demurred, and assigned the following causes :

1. That the last plea of the defendant does not set forth any direct allegation that he filed a petition in bankruptcy.

2. That it is not alleged in the last plea of the defendant that he, as partner of William McCullock, petitioned for the benefit of the bankrupt law, or that he was declared a bankrupt as a partner.

3. That in the last plea it is not alleged that annexed to his petition, or that there was contained in it, a list of his creditors, their respective places of residence, the amount due to each, together with an accurate inventory of his property, rights and credits, the kinds and description, the location and situation of each and every parcel and portion thereof, verified by oath.

4. That in the last plea it is not alleged that Folsom was a resident of the State or district of New-Hampshire at the time of contracting the debts declared on by the plaintiff, and also of the contracting the debts on which the said judgment was recovered ; and that said last plea does not allege that Folsom was a resident in the district of New-Hampshire at the time of the passing or at the time of the taking effect of the law to establish an uniform system of bankruptcy throughout the United States.

5. That in and by the last plea it does not set forth that the debt and judgment sued was not created in consequence of a defalcation as a public officer, or as executor, administrator, guardian or trustee, or while acting in any

Cutter *v.* Folsom.

other fiduciary capacity, or that it is provable under the bankrupt law.

6. That in and by the last plea it is not alleged that the debt of the plaintiff was provable under the bankrupt law.

7. The last plea should have been pleaded as a plea since the last continuance, and should have been in bar of the further maintenance of the action.

8. The said Folsom & McCullock was a foreign firm, and debts of a foreign firm are not dischargeable under the bankrupt law of the United States.

9. That the law establishing an uniform system of bankruptcy throughout the United States is unconstitutional.

10. The matters alleged in the brief statement, and which are to be tried by the jury, cannot be given in evidence under the plea of *nul tiel record,* which presents an issue to the court.

*Bell,* for the plaintiff. *Nil debet* is pleaded to all the counts, and should therefore be good for all. It is bad as to the first. *Judge of Probate* v. *Emery ; Tappan* v. *Evans.*

The plea alleges no petition, or schedules of debts and property ; nor that the partnership was included in the proceedings. U. S. Bankrupt Law, sec. 14.

Partners doing business in the West Indies cannot become bankrupt in the United States.

*Woodbury,* for the defendants. The first count is the only material one, the object of the suit being to obtain a new judgment. 2 N. H. Rep. 464.

Upon general demurrer it would be sufficient to allege, as he does in the conclusion of the plea, that he had complied with all the requisitions of the act.

The allegations are sufficient to show that the court had jurisdiction. He twice refers to the filing of his petition.

It is not necessary that he should claim his discharge as partner of McCullock, or that he should file a schedule of his debts or of his assets.

If the debt was contracted by the defendant in the exercise of any fiduciary office, it should be stated in the replication, and so taken out of the general operation of the act.

As to the objection founded on the foreign domicil, a discharge under insolvent laws extends to all persons and property within the jurisdiction of the court.

It never was pretended that the act of Congress was unconstitutional as respecting merchants.

GILCHRIST, J. The act of Congress passed on the 19th day of August, 1841, entitled, "An act to establish a uniform system of bankruptcy throughout the United States," provides that all persons residing in any state, district, or territory of the United States, owing debts other than those of the fiduciary character pointed out, who shall, by petition, setting forth a list and description of his creditors and of his property, apply to the proper court, shall be admitted to the benefits for which it provides.

A question raised by the pleadings is, whether the defendant by his plea sufficiently averred that he was residing within the State or district of New-Hampshire, to be entitled to the benefit of the act.

The plea states that the defendant, before, and on the fifth day of August, 1834, and until the 29th day of October, 1842, was a merchant, and until he returned to the district of New-Hampshire, on the twentieth day of October, 1842, and during all the time, did exercise the trade of a merchant with William S. McCullock, at Jeremie, in St. Domingo, until he, Folsom, left that place on the first of October, 1842, for the purpose of resuming his citizenship at Portsmouth, in the district of New-Hampshire, where the said Folsom ever resided as an inhabitant, except during his absence at said Jeremie, for the purpose of exercising his trade as a merchant.

Cutter *v.* Folsom.

In other words, the defendant, from 1834, resided at Jeremie, in St. Domingo, for the purpose of using the trade of a merchant, until, on the first day of October, 1842, he left that place, and arrived on the twentieth of that month in Portsmouth, in New-Hampshire, where he ever resided as an inhabitant except during his absence at Jeremie, as before described. This is a less direct averment of a residence in Portsmouth, or in New-Hampshire, than might have been, and often is, made in pleading, but is, we think, sufficient. In saying that he returned to Portsmouth, where he ever resided except during the period from 1834 to October, 1842, he in effect says that he ever resided in Portsmouth as an inhabitant, except during that period. He therefore shows himself entitled, so far as residence is concerned, to prefer his petition for the benefit of the act; for it is wholly immaterial whether or not he was an inhabitant when the act was passed, or when it took effect; its object being to embrace within its benefits not only such as at either of those points of time might have been, but such as at any subsequent period become, inhabitants of the United States.

The act requires the party who applies for its benefit to make a complete and effectual surrender of all his property, wherever situated and of whatever nature, and to place the same at the disposal of the district court, to be appropriated under its orders to the payment of the debts of the bankrupt. It is hardly necessary to remark that this reasonable requirement embraces property without, as well as within the borders of the United States, to the extent at least that is admitted by the just claims of alien creditors upon such parts of it as lie within the foreign jurisdiction, and within the grasp of the process of the foreign court. It is therefore obvious that the interest of the bankrupt, as a partner in a foreign house, must fall within the operation of the assignment, whether he petition for his discharge from his private debts alone, or

include also those for which he is liable as a partner. In the latter case the property of the firm is, with the exceptions referred to, specifically assigned for the use of the creditors of the firm, and all the partners who belong to the class of persons entitled to the benefits of the act, may, upon being thus brought in, apply for its benefits. Act of Cong., sec. 14. In this manner and to this extent may the district court, under the statute, acquire jurisdiction over a firm trading in a foreign country.

Another cause of demurrer to the plea is, that the debt which was the foundation of the judgment declared on, and of the present suit, is not alleged in the plea to have been other than of the fiduciary class excepted by the terms of the act from its operation, or that the debt was provable under the act.

But we are of the opinion that this is matter of avoidance, to be set up by the other side, and which does not require to be negatived by the defendant in his plea. As, if one pleads that such an one, being seized, made his will, he need not say that he was of full age, &c.; for if that or any other incapacity existed, the opposite party should, if advised, take advantage of it in his replication. Com. Dig., Pleader, C, 81. So if the defendant in trespass justifies entry by process on a *homine replegiando*, he needs not to say that the man to be replevied was not taken by the command of the chief justice, &c. *Ib.* In an action for words for saying a man is a thief, the plaintiff has no occasion to aver that he is not a thief. *Chapman* v. *Pickersgill*, 2 Wils. 145; 1 Chit. Pl. 228; where it is said that "matter in defeasance of the action need not be stated; for wherever there is a circumstance the omission of which is to defeat the plaintiff's right of action, *primâ facie* well founded, it must in its nature be matter of defence, and ought to be shown in pleading by the opposite party." *Hotham* v. *East India Co.*, 1 T. R. 638.

It has accordingly been held in this State that in plead-

ing a discharge in bankruptcy, it is only necessary to set forth so much of the proceedings in the district court as will show that the court had jurisdiction of the petition, and granted the discharge. If there is any matter which renders the discharge invalid, or takes the case out of its operation, the plaintiff may set it forth in his replication. *Johnson* v. *Ball*, 15 N. H. Rep. 407.

There is nothing in the act to prevent the proving of a fiduciary debt under the bankruptcy, and, if proved, such a debt would probably be barred like any other; *Fisher* v. *Currier*, 7 Met. Rep. 424; so that if the presumption were allowed to prevail that the debt which the plea seeks to avoid was actually of that character, it would be wholly inconclusive.

The same rule applies as to the defendant's omission to show that the debt was provable under the act, since the plea shows that it was a debt founded upon the causes alleged in the declaration, and due before the filing of the petition. It is therefore *primâ facie* a debt provable under the act, and within its meaning. If there be any peculiarity exempting it from the operation of the act, it is a latent one, and must be pointed out by the party who seeks to avail himself of it. To the same point is the case of *Johnson* v. *Ball*, 15 N. H. Rep. 407, before cited.

It is to be borne in mind that the objection raised by the demurrer is not that the defendant has failed to bring himself within the general purview of the act, by omitting to show that he owed debts other than of the fiduciary character adverted to. Such cause of demurrer, specially assigned, would have raised a different question from the one which we have had to consider. *Gill* v. *Scrivens*, 7 T. R. 27.

As to the seventh cause of demurrer assigned, it appears that both the pleas were entered at the term at which the defendant, upon whom no personal service of the writ had been made, first appeared and answered to the action.

The plea is therefore well enough. It falls within the rule laid down by the court in *Kimball* v. *Wilson,* 3 N. H. Rep. 101. When the matter of the plea in bar of the further maintenance is in the first instance, and before any other plea filed, pleaded in bar, it need not be alleged to be *puis darrein continuance.*

The ninth cause of demurrer assigned has not been insisted upon in argument, and may perhaps with propriety be dismissed, by briefly referring to the fact that the constitutional soundness of the act has been generally admitted in the various courts of the Union; although the question has not, in many cases, been directly raised and settled. *Nelson* v. *Carland,* 1 How. 265, 277, in which it is vindicated by Mr. Justice *Catron.*

Its constitutionality has been postulated in several cases that have arisen in this court. *Johnson* v. *Ball,* 15 N. H. Rep. 407; *Kittredge* v. *Emerson,* 15 do. 227.

Another objection to the plea variously assigned by the causes of the demurrer, is, that it does not allege that application was made by petition to the district court, by the defendant, whether as a partner, or in his own personal behalf, setting forth the list of his creditors and inventory of his assets, as required by law. This objection is sustained; there appearing to be no such allegation in the plea, and is fatal unless cured by an amendment. If such amendment is made upon application to the court below, it will be unnecessary to consider the effect of the cause of demurrer last assigned.